Good morning, sir. You may proceed. Thank you, Your Honor. May it please the Court, Ms. Kuyper, Mr. Swift. My name is Ravi Narayan. I'm in AUSA in Cedar Rapids, Iowa, and I'll be arguing on behalf of the government, the appellant in this case. This is a case about an officer in Waterloo, Iowa, who conducted a traffic stop on July 1st of 2016. That traffic stop led to the seizure of a loaded firearm that resulted in a federal indictment. Now, after the two people in the car were indicted, a motion to suppress was filed, and what happened at that suppression hearing before a magistrate judge is what gave rise to this interlocutory appeal filed by the government. What was at issue at that suppression hearing was the traffic stop itself, the basis to pull over the car that Mr. McLemore and Mr. Rode were both inside. At that hearing, Officer Deanna Devay with the Waterloo Police Department testified about the reason that she pulled over the car. After that testimony, the magistrate judge found that Officer Devay credibly testified she was unable to read what appeared to be a temporary registration card in the window of the BMW. On that basis, in this court's decision in Givens, the magistrate judge recommended that that motion to suppress be denied and recommended that the stop be upheld. The case then went to the district court, and the district court then set aside the credibility finding of the magistrate judge with respect to Officer Devay without holding a separate hearing. The district judge found that Officer Devay was not credible when she testified that she was unable to read what appeared to be a temporary registration card in the window of the BMW. That decision by the district court led to it distinguishing this court's decision in Givens, and it led to the district court ultimately recommending that the motion to suppress be granted, or granting the motion to suppress. From that, the government filed interlocutory appeal. The two issues for this court to decide is, number one, the legal question of whether in this procedural posture a district judge can reverse the credibility finding of the magistrate judge without first holding a separate hearing and seeing that witness testify. Well, you're swimming upstream arguing a categorical rule like that. That's the way you argue it. Every time a district court would ever do this, it has to be reversed. Understood, Judge. I frankly do not accept that. Understood, Judge. The case that the government primarily relies upon in its brief is United States v. Toms out of the Ninth Circuit, and the Toms court did not adopt an absolute rule, and it did include a carve-out along the lines of what Your Honor just made reference to, and that is the Toms court said that a district court abuses its discretion when it reverses that credibility finding without viewing key demeanor evidence, but it made one exception. And the exception the Toms court noted, and this is at page 903 of that opinion, is that where the district judge finds that the magistrate judge's credibility determinations had no evidentiary basis, then they don't need to hold a separate hearing. That would be a situation in which judgment as a matter of law would issue to the defendant. And so that's the analogy that the Toms court made, and that's the carve-out that the Toms court made to address situations like that. Am I correct from the briefs that it is undisputed this was a pretextual stop in the sense that the officer had been directed to stop the car and elected out of prudence or with a caution or whatever to find a traffic violation so he didn't have to make just an investigative stop? That's correct, Your Honor. The traffic stop was pretextual. That makes this, that makes your task harder here. Well, Your Honor, with And I don't, the, Gibbons is, was upheld on a different basis than what you're, what you argued on the merits here. And I don't see the text of the statute until I read Gibbons last night and I realized that I needed the text of the Iowa statutes you rely on. Because what, you just call this an equipment violation. Well, what's an equipment violation when the officer didn't have a card, it was. And so you think the Iowa legislature said even if you, even if the officer knows that it's a, what it is, it has to be entirely readable or he has a Fourth Amendment authority to stop the car to do a traffic stop? Isn't that your case here? With respect to that last point, Judge, the issue of whether the officer knew that it was a valid temporary card is an issue of dispute. The magistrate judge found that. He knew it was a temporary card. Unlike the, unlike the officer in Gibbons, he knew what it was. The officer did not testify that she indeed knew that it was a temporary card. She testified that she thought it was a temporary card, determined that it was a temporary card after the stop, but that at the time she pulled over the car, did not know that it was a valid temporary card. And so with respect to the Iowa statutes. In this case, it had been the facts in Wren that Wren might have come out differently in the Supreme Court. This is such a, and you say, well, it was a mistake of law. It was a phony, it was a phony traffic stop. There may have been, there may have been actually a valid basis to stop. Well, Your Honor, in the government's view, it was not a phony traffic stop. Admittedly, the officers were looking for a reason to stop the car based on another investigation. It turned out to be a wrong traffic stop. The temporary card did turn out to be valid. With respect to the Iowa statutes that Your Honor has referenced, in the government's view, there are three that are relevant. So Section 321.98 provides generally that whether we're dealing with a, with a temporary card or a permanent plate, that they must be valid. Then sections 25.25 and .38 provide different standards of readability for temporary cards. Read the language that says it has to be entirely readable. There's no language that said it has to be entirely readable. That's correct, Judge. So with respect to temporary cards, the language is, quote, plainly stamped or stenciled, and that's in Section .25. And with respect to non-temporary plates, that would be the metal plate that you typically see on a car, the quotation is clearly legible. So, so there's no, there's no dispute here that the standard that applied was plainly stamped or stenciled. And the government's reading of Gibbons is that if there's reasonable suspicion as to the validity of the card, meaning that Section 321.98 requires that the temporary card be valid, if there's reasonable suspicion as to whether it's valid, that's also a... Gibbons, you won't find that language in Gibbons, at least I didn't. So... The officer didn't know what it was. That was what upheld stopping Gibbons. Here the officer knew what, what the document was. Oh, but I couldn't read the fine print, and therefore I didn't know it was valid. That's, that's the difference in the cases that I, and I could, I find that difference critical, frankly. So, it is an issue of factual dispute whether the, the officer knew that or not. The district judge agreed with Your Honor and found that the officer knew that it was a, a, a temporary card. But the magistrate judge did not find that. The magistrate judge found that she thought it was that, but... We, if we go there, we don't care about the credibility issue, do we? I would disagree with that, Your Honor. How? What, how does the credibility issue stay relevant if we agree with what you say, the district court agrees that, that this was simply distinguishable on the merits, factual merits from Gibbons? Because that issue that Your Honor has identified turns on whether the officer was credible in saying she didn't know it was a valid temporary, a valid temporary card. You just inserted the word valid. I'm saying that, that wasn't the, that wasn't the crux of the decision in Gibbons. Because in Gibbons, the officer didn't, the finding was the officer didn't know what, if it was a card at all. Okay. So, if, if the officer knows it's a card, and that's a critical distinction with Gibbons, then why does credibility matter as to whether the officer didn't think, know if it was valid? Couldn't read the fine print, if you will. Because the officer here didn't know that it was indeed a card, thought it might be a card, found out after the fact that it was indeed a valid card. The way that the... And was going to make the stop anyway. Was going to... I mean, had orders to make the stop. Sure. That is undisputed. Had orders to make the stop, but the officer testified that she believed she'd identified a traffic violation and pulled over the car on that basis. And so if the officer did not think that she'd identified a traffic violation, I don't know that on this record we can say she would have pulled over the car anyway. She pulled over the car upon identifying a traffic violation. Or another one. Maybe a better one. Perhaps. But this is... I mean, that's what we usually encounter. And they're usually better. So... Under Supreme Court jurisprudence, the government wins. But here, I don't... Unless the statute says it has to be 100% readable and validity has to be determined, has to be able to be determined from a distance, I don't see an objectively reasonable basis for the officer to conclude, I've got a violation here. It was simply, hey, let's look into it. So on this factual issue we've been discussing, the government believes that the key exchange occurs from page 43 to 44 of the transcript involving Officer Devay. When she says that she did not know... Again, we're dealing with the word valid. I understand Your Honor's point on that. But the officer testified that she did not know the card was valid until after she approached the card. And then she says that when she pulled the car over, you could not see that tag whatsoever. You could see that it was a piece of paper affixed to the left portion of the window, but you could not see those numbers or letters. Can you say whether the expiration date isn't big enough print to ever be visible until you get a few feet away on foot? There's a 45-day limit, right? That's correct, Your Honor. So if it's more than 45 days, it's no longer valid? Correct. And can the expiration date be seen from a patrol car traveling a lawful distance behind a car with this kind of tag? Generally speaking? Yes. I doubt it. No, no, no. There's not... If we uphold the government's position here, everyone driving with a temporary card can always be subject to a traffic stop. No, Your Honor. No, Your Honor. Who wouldn't be? The officer can always say, I didn't know it was valid. It might have been 46 days old. There has to be reasonable suspicion as to whether it's valid, which is looked at on the totality of the circumstances. What was the suspicion besides I couldn't read it here? Her suspicion was that she could not see the tag whatsoever. She knew it was a piece of paper affixed to the portion of the window but could not see the numbers or letters. How do you accept that she knew it was a temporary registration card? She didn't know it was valid. She didn't testify that she knew it was a temporary registration card. She testified that she thought it was a temporary registration card. She testified that when she was pulling over the... That destroys objective reasonableness if expiration validity doesn't matter. Right? I'm not sure I understand that point. If she believed it was a temporary registration card but it could have been any old 3x5 card, she doesn't have an objectively reasonable basis to stop because she doesn't believe it isn't a registration card. The only thing she doesn't know because she can't read the fine print is whether these 45-day cards, the card was still valid. And if that's the basis for a stop, then anybody driving with one of these cards for the entire 45 days is subject to a traffic stop. I don't think that that's the case here and that's not the position that the government's advancing. The magistrate judge, upon listening to this testimony, found that she credibly testified she was unable to read what appeared to be a temporary registration card. And to the extent when we go back over the transcript, we look at the language and think, what did the officer mean here? The government's point is that the person best situated to determine what the government meant is the magistrate judge. With the permission of the panel, I'll reserve my remaining time for rebuttal unless there are additional questions. Good morning, counsel. You may proceed. Good morning, Your Honor. May it please the court? Counsel. My name's Melanie Kuiper and I represent Mr. McLemore in this case. I will have 12 minutes and Mr. Swift, who represents Mr. Brody, will have the remaining three minutes. Your Honors, this district court properly granted the motion to suppress in this case based on the fact that the judges indicated that there was no legitimate reason for the traffic stop, no objectively legitimate reason for the traffic stop in this case. As the judges indicated, Officer Devaye knew that it was a temporary registration card. The record is replete with examples of her indicating that. In Defense Exhibit A, which is the actual audio recordings and some video recordings of the interactions, she indicates she can see the plate, but she can't read what's on it. So at some points she indicates that the temporary tag is a plate, but clearly she also indicates in the recordings that I can see the dealer plate. But when discussing with Sergeant Richter, her supervisor, who told her to do the stop, her first utterings when she is behind the vehicle to Sergeant Richter is, no violations yet. This is when she is behind the vehicle, she's looking at the vehicle, she's looking at what appears to be the temporary registration and states there's no violations yet. After that, when there's a discussion with Sergeant Richter about how they can possibly pull this car over, she indicates I can see the plate, but I can't read what's on it, meaning the date. Sergeant Richter then says, well, if you can see the plate, but you can't read it, basically there you go, that's your basis for the stop. Officer Devay also in her report in Exhibit B and in her affidavit in Exhibit J also writes about the paper plate in the window, meaning the temporary registration card. The record of the transcript on page 44, Officer Devay is asked about the temporary registration and she says, the question is, okay, in that temporary tag that was in the back window, that's the normal temporary tag that the Iowa Department of Transportation issues, correct? Yes, correct. She was always indicated that that was a temporary tag. She never indicated that she did not know whether it was just a piece of paper that was in the window, which is the case in Givens. In Givens, as this court has decided and indicated, that officer was familiar with temporary tags, could normally read temporary tags in the evening, in the nighttime, and also had had an issue with fraudulent temporary tags. There is no such indication in this record that the same was true for Officer Devay. In Givens, the officer stopped the vehicle and approached it because he didn't know whether it was a temporary tag. At the point that the officer in Givens approached the vehicle, he also smelled marijuana at that point, that he decided that the tag was valid. So that's why the officer in Givens proceeded with the stop in that case. In this case, Officer Devay was unconcerned, wholly unconcerned, with the tag once she made the stop. Her testimony was that when questioned whether or not she could tell the tag was valid when she had the stop, she indicates that the first time she could read the tag was when she was outside of her car, standing at the trunk of Mr. Rohde's car. But when asked whether she looked to see if it was valid, she indicated, I didn't need to. I didn't even bother looking to see if it was valid because I had probable cause just because of the temporary tag. That was her testimony. So her testimony was that she didn't look at the validity of the tag because she was more concerned with the occupants of the vehicle. She had also testified... Under Wren, I'd say that's irrelevant. Yes, Your Honor. However... In a lot of cases, so many things happen after a valid traffic stop when there's criminal activity afoot that the officers may never even get around to why there's danger and everything else. Correct, Your Honor. But there was nothing else that was going on at this point. The cited... Except they thought she'd been instructed to stop for reasons of criminal activity being afoot. That's what she was... That's what she had personal knowledge of, but... Correct. She probably assumed that her supervisors did. Well, exactly. We don't have the record of the discussion that happened between Officer Davai and her supervisor. In the record is the testimony of her supervisor. We don't have the government attempting to establish alternatively that there was a basis to stop the car other than a traffic stop. Correct, Your Honor. If we had that, if the government had taken that position, we'd have those facts. Correct, Your Honor. As the government has conceded, this was a presexual stop, which would be lawful if there had been a valid traffic violation, but there is not in this case, Your Honor. Another issue with regard to... Well, first, we would submit to Your Honors that this court does not need to determine whether Officer Davai was credible or not, that the record is clear about the reason for the stop, and that she could see a temporary tag. However, the record is also clear, if Your Honors go to the issue of credibility, that Officer Davai was incredible, just merely based on the record, not even through her demeanor. Officer Davai testified that she only followed that BMW for one to two blocks. However, when you look at Defense Exhibit H, which is a map of the area, and you look at Officer Davai's testimony, she indicates that she followed the car on Logan Street, on Conger Street, down 63rd and Mullen, where she ultimately made the stop at 63rd and Franklin. That's approximately eight or nine long blocks, so for quite a distance. We believe that this case is directly analogous to the Wilson case, that that case is key, even though it is not what this court needs to follow. The facts in that case directly line up with this case. In Wilson, the officer randomly was behind this vehicle, followed the vehicle for a quarter mile to a half mile, and determined that it was a temporary tag, but that officer couldn't read the date, whether it was expired or not. That's the exact facts in this case. And the Wilson court determined that, as Your Honor indicated, if you could pull over every car with a temporary tag, that wouldn't indicate that there's a reasonable, articulable suspicion that criminal activity is occurring. The facts in this case simply do not establish probable cause that an equipment violation had occurred. Your Honor, turning to the next issue, we believe that the mistake of law issue that the government raised was waived. While the district court did mention in a sentence, uttered the words mistake of fact or law, we don't believe that that was properly raised below. United States v. Green at 691 F. 3rd 960, this court's case, regarded the issue of waiver on a motion to suppress. And under Federal Rule of Civil Procedure 12, if an issue on a motion to suppress is not raised in the district court, then the issue is waived. However, even if the court feels that that issue is not waived, Officer Devay was not mistaken about the traffic laws. She recognized it as a temporary tag, as I've already indicated. The statute issue, IO Code 321.25, as the court has pointed out, has no distinction about legibility, only that it have the words registration applied for. And has the date of delivery of the vehicles, which the vehicle in this case did. There was no requirement for the tag to be illuminated. And the dealer tag in this case actually was illuminated. Finally, your honors, with regard to the credibility determination, as the government has indicated, they're relying on the Tom's case from the Ninth Circuit. That case was a he said, she said case that turned specifically on the demeanor of the witnesses. In the Tom's case, it was a Frank's hearing. It was a Frank's hearing to determine whether the agent was truthful in his affidavit for the search warrant. At that hearing, the agent testified, one of the defendants testified, and I believe eight other witnesses testified on that particular issue. There was no video or audio recordings. Obviously, the issue in that case was the smell, so that wouldn't have been recorded in a video or audio either. However, the reason why that court remanded for the district court to decide the credibility issue was because it was a direct issue on the person's demeanor, on their credibility, on whether or not they lied in applying for a search warrant. In this case, the record is- Reading from Givens at page 990, Iowa Code 321.25 includes, quote, the card shall have plainly stamped or stenciled the registration number of the dealer and the date of delivery of the vehicle. Correct, your honor. Is there any case law on what plainly stamped means? I have not found any, your honor. If there is any- Rather critical to your argument? Your honor, I believe that the mere fact that she understood it to be a temporary tag is all that is needed in this case. That because she knew it was a temporary tag, the fact that she couldn't read the actual date was not a legitimate reason for her to make the traffic stop in this case. As in Givens, if there had been testimony that normally she could read those dates, and on this evening she could not read those dates, if there was testimony from her that- But that is, just reading the Givens opinion, 321.25 is not the operative statute. It's 321.98 says operating a vehicle without displaying a temporary paper registration card amounts to a simple misdemeanor. So does that, or does that not incorporate by reference, the reference to the requirement that it would have plainly stamped? The requirement that it- Is that what this turns on? I don't believe so, your honor. Why not? I believe that the fact that she knew it was a temporary registration is what this case turns on. That whether or not she could actually read the date- Well, usually, I mean, the objectively reasonable basis that there's a violation going on makes it fairly important what is a violation. Correct, your honor. And I see my- So, all this appears to say is operating without a temporary paper registration card amounts to a misdemeanor. Yes, your honor. I see my time has concluded. I do not want to- I don't want to take Mr. Swift's time, but your honor- Oh, all right. Then sit down. I can address, your honor- Oh, I think you should, and it cuts into his time. Yes, your honor. Your honor, with regard to the temporary tag, if the officer believes that there is something amiss about the temporary tag, then certainly that is a reason to stop. In this case, there was no citation of something being wrong with the temporary tag. Thank you, your honor. Mr. Swift. Good morning. Good morning. We note that you were appointed under the Criminal Justice Act. I am, your honor. Thank you. The court appreciates your willingness to accept the assignment. Thank you, your honor. Appreciate it. I would like to please the court, counsel of the government, counsel for Mr. McLemore. I would like to take maybe a little bit broader step back in terms of this approach. I believe the issue here in front of this court is whether or not the district court made clear error in its factual findings. I think the two standards of review that we're looking at is the clear error on the factual finding and the second one would be the de novo review of any legal conclusions that Judge Strand made. In this case, I don't believe that there is any clear error that the government has identified in terms of the facts of this particular case. Judge Strand conducted a review of the magistrate's report and recommendation as he's required and authorized to do under the Federal Magistrate's Act. He reviewed the transcripts. He reviewed the exhibits. Some of the exhibits are photographs. Some are videos. He also reviewed the statute that I had requested that the court take judicial notice of. After reviewing all of that, the judge issued his very lengthy, well-reasoned, and documented findings of fact in this case and also his decision. Neither before his decision or after did any one of the three parties to this proceedings ever request the district court to conduct any additional further hearing on this matter. There's nothing in the record, I would say, that suggests that Judge Strand's decision was based on his consideration of the demeanor, attitude, mean of the witness, Officer Del Valle. Now, he may have made factual and credibility determinations, but those credibility determinations were not in any way affected by the need to see an individual testify. I suggest that we imagine or project what would have happened differently in this matter if this particular officer had testified, again, to the same matters that she had testified to in front of Judge Strand. Does that suggest in any way that his ultimate fact findings or legal conclusions would have been different? And I would suggest the answer to that is no. And therefore, I think there should be an affirmation of the judge's decision in this particular case. I know I'm short, so I'll stop and inquire of questions that people might have. Very well. Thank you for your argument. Thank you. May I please the Court? You may proceed. Your Honors, the issue of the officer's credibility was relevant to the question of whether there's reasonable suspicion of a violation as to the validity of the plate or whether it was plainly stamped or stenciled. And that's evidenced by the fact that, as noted on page 30 of the government's brief, there are six places in the district court's analysis of the Givens issue where it references its views on officer-devised credibility before it ultimately makes the alternative finding regarding officer-devised credibility. That suggests that the district court did consider officer-devised credibility and its rejection of it in determining whether there's reasonable suspicion as to whether there was a valid tag or whether the tag was plainly stamped or stenciled. Didn't the district court preface it by saying, as an alternative finding, I find that Duval's testimony is not credible? Yes. The express finding as to credibility was an alternative finding. If we can avoid—I shouldn't put it that way. Would we be engaged in a lot of dicta if we followed your advice, followed your argument about the necessity for a new fact-finding hearing when, in fact, we could easily—well, I shouldn't say easily, could affirm it on a ground that doesn't depend upon any fact-finding? Well, the government's view is that this case can— But not any demeanor fact-finding. Demeanor fact-finding was relevant to this in that, to determine whether or not the officer had reasonable suspicion of whether it was a valid tag or whether it was plainly stamped or stenciled. The credibility of her testimony when she says you could not see that tag whatsoever, you could see that it was a piece of paper affixed to the window but could not see the numbers or letters, the magistrate judge's interpretation of that is critical to the Givens analysis as to whether there's reasonable suspicion of criminal activity. And the reason the concerns addressed by the Ninth Circuit and Tom's are also relevant here is that the government does have an interest in the integrity of the fact-finding process and to proffer its witnesses to a district judge before that judge finds that that officer is not credible. Tom's discusses the serious professional and legal consequences that can go along with an adverse credibility finding as an officer. I've come to grips with Judge Loken's question in the opening argument. If this passes, in other words, ultimately, a holding in your favor would say that an officer can stop any vehicle with a temporary tag? No, because that's not this case. The magistrate judge... Must the officer be able to determine that it's not legible or not visible? In other words, would a holding in your favor make every person fair game for a... Would it be unfair to say that this is a pretext squared stop? I don't think you'd agree with that. I don't agree with that. So, no, an officer can... Give me a scenario where the stop would not be. Where you say, no, we're not saying that every temporary car vehicle can be stopped. That's... What one on your theory of the case? Give me a situation where it wouldn't be valid to stop. Where an officer sees that a car has a temporary tag and says, I want to figure out whether that's valid or not. And I pull it. I'm pulling it over to determine whether it's valid without reasonable suspicion as to its invalidity. What's the reasonable suspicion here other than I can't read it? Credible testimony that the officer says you could not see it whatsoever. You could see it was a piece of paper affixed to the left portion of the window, which the magistrate judge determined to be credible testimony that she was unable to read what appeared to be a temporary registration card in the window of the BMW. So the magistrate judge observes the officer testify, and the officers, in the magistrate judge's view, credibly testified that she had reasonable suspicion specifically as to validity. The difference is the officer having reasonable suspicion as to whether it's valid versus simply pulling over a car after they see a temporary tag to figure out whether it's valid or not. So that's what the reasonable suspicion is here. I see that I'm quite a bit over my time. Unless the judges have other questions, I'll stop there. Apparently not. We thank both sides for the arguments in your briefs. The case is now submitted, and we will take it under consideration.